```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON
```

ASHLEY MAE WEBB,                )
                                )
    Plaintiff,                  ) Civil Action No. 5:09-CV-314-JMH
                                )
                                )
v.                              ) **MEMORANDUM OPINION AND ORDER**
                                )
                                )
JESSAMINE COUNTY FISCAL         )
COURT, et al.,                  )
                                )
    Defendants.                 )

                    **    **    **    **    **

Plaintiff has filed a Motion in Limine [Record No. 78] to which Defendants[1] have filed a Response [Record No. 98] and Plaintiff has filed a Reply [Record No. 104]. Plaintiff has also filed a second Motion in Limine and Motion for Sanctions for Spoliation of Evidence [Record No. 100], Defendants have filed a Response [Record No. 103], and Plaintiff has filed a Reply [record No. 106]. Defendants have also filed a Motion to Exclude the Testimony of Dr. Lou Ann Kruse [Record No. 95-1], Plaintiff has filed a Response [Record No. 101], and Defendants have filed a Reply [Record No. 106]. These motions are ripe for decision.

---

[1] The Court recognizes that Defendant Teaven, in her individual capacity, is the only Defendant still facing liability as a result of this action. *See* [Record No. 97]; [Record No. 102]. As these motions and responses, however, were made by Defendants jointly, the Court will refer to Defendants in discussing these arguments throughout this Memorandum Opinion and Order.

# I. THE COURT SHALL GRANT PLAINTIFF'S MOTION TO EXCLUDE THE FOLLOWING: MEDICATION TAKEN PRIOR TO HER ARREST, ONLINE PHOTOGRAPHS, SETTLEMENT OFFERS.

The Federal Rules of Evidence lay out the basis for deciding the admissibility of evidence proffered to this Court. All relevant evidence is admissible unless otherwise excluded by the Constitution, Act of Congress, or the Rules. Fed. R. Evid. 402. Rule 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence, however, shall not be admissible. Fed. R. Evid. 402. Furthermore, Rule 403 states

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Based on the above stated rules, this Court shall hold the medication taken by Plaintiff prior to her arrest, online photographs, and the May 19, 2011 audio recording taken at the Jessamine County Detention Center ("JCDC") inadmissible.

### A. Medication taken prior to arrest

Plaintiff's ingestion of Lortab prior to her incarceration at the JCDC, although relevant to the amount of mental anguish and humiliation she experienced, has low probative value and a high

2

danger of unfair prejudice. Defendants dispute Plaintiff's claim that she began experiencing pain associated with her labor about 1:00 a.m. on August 26, 2008 and hope to use Plaintiff's consumption of Lortab in support of this argument. [Record No. 98]. Plaintiff counters that Defendant Teaven admitted that she began hearing complaints from Plaintiff "about 1 or 2, maybe a little before then." [Record No. 104] (quoting Record No. 104-1, p. 14, lines 18-20)(deposition of Defendant Teaven). Plaintiff's argument, however, is misplaced as the question is not whether Plaintiff began complaining about her pain but rather if Plaintiff was experiencing pain at the time. As a result, the Court finds Plaintiff's ingestion of Lortab before being booked into the JCDC to be relevant.

Evidence that Plaintiff took an "illicit" drug, as characterized by Defendants and Defendants' expert Don Leach, however, creates a danger of unfair prejudice which substantially outweighs its probative value. *See* [Record No. 104]; [Record No. 78-3] ("Ms. Webb failed to inform the jail staff that she had taken an illicit narcotic (Lortab) prior to being arrested."). Although Defendants argue this drug lessened Plaintiff's experience of pain on August 25-26, 2008, Defendants fail to state with any particularity the drug's intensity or its effects on Plaintiff as time continued to pass from Plaintiff's consumption of the narcotic hours earlier. Defendants' argument that Plaintiff stated she took

the drug at 8:00 p.m. on August 25, 2008 and that Plaintiff stated it took eight hours for it to process through her body falls woefully short of showing the effects it would have in mitigating Plaintiff's pain. Furthermore, Defendants' characterization of the Lortab as an "illicit" narcotic creates the danger of unfair prejudice to Plaintiff as it suggests Plaintiff is someone who abuses drugs and has a disposition to be reckless in regard to her pregnancy. *See United States v. Newsom*, 452 F.3d 593, 603-04 (6th Cir. 2006) (holding that questions regarding Defendant's various tattoos that included references to guns and gang life was unfairly prejudicial as it suggested a "hostile, criminal disposition"). This Court, therefore, shall exclude evidence concerning Plaintiff's ingestion of Lortab before being arrested and incarcerated at the JCDC on the night of August 25, 2008.

**B. Online photographs[2]**

Online photographs that Defendants aver to be of Plaintiff are not relevant. Defendants have attached eight photos to its Response to Plaintiff's motion, seven of which show a woman,

---

[2] Plaintiff argues that her motion to exclude should also apply to any statements posted on social media sites associated with these online photographs although noting, however, that Defendants have not mentioned or otherwise alluded to these statements. [Record No. 78]. As Defendants do not mention or otherwise allude to any online statements in either their Response or other documents, this Court does not have the ability to properly evaluate their admissibility. Therefore, this Court shall limit its review of Plaintiff's motion to the online photographs currently before it.

4

presumably Plaintiff, in a provocative pose. [Record No. 98-1]. Defendants argues these photos, which Defendants claim[3] appear on Plaintiff's public MySpace account, are "of such a nature that a reasonable person would be embarrassed if such photographs were placed in a public view." [Record No. 98, p. 6]. Thus, Defendants argue these photos make it less probable that Plaintiff would experience humiliation and mental anguish by being in a jail cell while delivering a baby. *Id*. However, as argued by Plaintiff, "[b]eing ignored, or called a child and a liar, during labor and delivery can certainly be considered humiliating and embarrassing in a fashion totally different than taking photographs like those at issue here." [Record No. 104, p. 5]. Although the appearance of provocative photos online may cause some humiliation, it bears no relation at all to the extreme humiliation and mental anguish a woman forced to go through labor on her own in a jail cell would bring. Thus, this Court shall grant Plaintiff's motion and exclude the online photographs of Plaintiff.

---

[3] This Court notes that Defendant has not laid a proper foundation for these photos, their authenticity or the basis for these photos appearing on the internet as argued by Plaintiff. [Record No. 104]. Although Defendant has attached photos of a woman wearing, in some cases, little clothing, these photos bear no indicia of authenticity, such as a web address or a photo of these images on the public MySpace account from which Defendants claim they originated. *See* Fed. R. Evid. 901; *see generally* [Record No. 98-1]. Regardless of whether Defendants could provide the proper foundation for these photographs, however, this Court shall exclude these photos based on relevancy.

**C. May 19, 2011 audio recording**

In light of the Court's Memorandum Opinion and Order of August 5, 2011 [Record No. 97], the audio recording from inside the JCDC made on May 19, 2011 is also inadmissible as it is irrelevant. The recording made by a surveillance camera in the lobby of the JCDC contains several statements made by Plaintiff to Crowe, a current JCDC employee and former Defendant in this case. In this recording, Plaintiff allegedly tells Crowe that she is sorry for saying mean things to him and that she told others that she did not want anything to happen to him as a result of her giving birth in the JCDC. [Record No. 103].[4] This Court, however, dismissed all claims against Crowe and all other defendants, except for Defendant Teaven, in her individual capacity. *See* [Record No. 97]; [Record No. 102]. When considering whether this conversation, in which only Crowe was referenced, makes it more or less probable that Teaven was deliberately indifferent to Plaintiff's needs or that Teaven acted negligently, it is clear that this conversation is irrelevant. This Court, therefore, shall grant Plaintiff's motion and exclude the audio recording of May 19, 2011.

---

[4] Plaintiff failed to attach the transcript of the conversation nor the recording of the May 19, 2011 conversation itself to her vague motion to exclude this recording. *See generally* [Record No. 100]. Defendants' description of the conversation, therefore, is the only basis for evaluation. [Record No. 103]. Based on the description provided by Defendants, however, this Court holds the conversation is irrelevant as to Teaven's liability.

**B. Settlement offers and negotiations shall not be admissible under Rule 408.**

Similarly, settlement offers and negotiations shall not be admissible. Rule 408 states no party shall use the "furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise a claim" nor the "conduct or statements made in compromise negotiations regarding the claim" to prove liability, to prove the validity of the amount of a claim, or to impeach through prior inconsistent statements. Fed. R. Evid. 408. This does not, however, require exclusion of settlement offers or the conduct and statements surrounding those offers if a party attempts to use it for another purpose, such as bias or proving undue delay. *Id*. Defendants argue that, since settlement offers and negotiations can be used to show bias, this Court should reserve judgment until such time as it is offered at trial. Plaintiff, however, argues that Defendants have not offered any explanation as to how these talks could be used properly. This Court, as well, sees no reason to this evidence could be properly admitted and shall grant Plaintiff's motion to exclude settlement offers and negotiations pursuant to Rule 408.

**II. THE COURT SHALL GRANT, IN PART, PLAINTIFF'S MOTION TO EXCLUDE PLAINTIFF'S CRIMINAL HISTORY AND JUVENILE RECORDS.**

Plaintiff's criminal history and juvenile records, however, are relevant to the amount of mental anguish and humiliation

Plaintiff experienced while incarcerated in the JCDC. Although Plaintiff correctly argues that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity, therewith," Rule 404 also states this evidence may be admissible for other purposes provided it goes to the ultimate issue. *See* Fed. R. Evid. 404; *United States v. Anthony*, 712 F. Supp. 112, 114 (N.D. Ohio 1989) (excluding prior crime evidence when it was attempted to be used to prove a collateral matter in a criminal case).[5] This Court agrees with Defendants that Plaintiff's feelings as to the jail and the criminal justice system experienced as a result of her previous criminal history is just such a purpose contemplated by the Rule. Thus, Plaintiff's previous criminal history could make it more or less probable that she felt mental anguish and extreme humiliation based on prior incarcerations at the JCDC. Furthermore, unlike the consumption of Lortab hours before her incarceration, this evidence has a high probative value as it establishes the baseline for Plaintiff's understanding of JCDC operations and the eventual mental anguish and humiliation that resulted when those operations broke down, as averred by Plaintiff. Thus, Plaintiff's motion

---

[5] Plaintiff appears to argue the list of exceptions in Rule 404(b) is exclusive. *See* [Record No. 78, p. 6]. Rule 404(b), however, is an inclusionary rule allowing all evidence which does not go to criminal disposition. *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997). Thus, "evidence is admissible under 404(b) if it is '(1) relevant to an issue other than character, (2) necessary, and (3) reliable.'" *Id.* (citation omitted).

shall be granted, in part, and denied in part, and this Court shall allow Plaintiff's criminal history and juvenile records solely for the purpose of establishing Plaintiff's prior experience inside the JCDC or other jails.

**III. THE COURT SHALL GRANT DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. LOU ANN KRUSE.**

In addition, Dr. Lou Ann Kruse shall not be allowed to testify at trial as Plaintiff failed to identify her as a potential witness. Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose to the other parties the identify of any witness it may use to present expert opinion. Fed. R. Civ. P. 26. Rule 37(c) states, in pertinent part:

> If a party fails to provide information or identify a witness as required by 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37. As a result, should this Court find that Dr. Kruse plans to give expert testimony, it shall not allow Plaintiff to present Dr. Kruse as a witness unless the failure was substantially justified or is harmless.

Plaintiff's argument that Dr. Kruse does not fit the definition of an expert witness as described in the Federal Rules of Evidence is without merit. Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

> in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Plaintiff argues Dr. Kruse does not fit this definition as Plaintiff intends to have Dr. Kruse testify only to Plaintiff's "former and current mental state and to answer basic questions concerning someone with her condition" and will not ask her to opine on the mental anguish or humiliation a person in Plaintiff's condition may have experienced on the night in question. [Record No. 101, p. 2]. This testimony, however, falls precisely within the confines set forth by Rule 702. Questions regarding psychological conditions and mental states, no matter how basic, go well beyond the knowledge of a typical juror and can only "assist the trier of fact to understand the evidence." Fed. R. Evid. 702. This Court, therefore, agrees with Defendants that Dr. Kruse "is a psychologist who can explain concepts beyond the understanding of the typical layman [and] is therefore an expert witness." [Record No. 105, p. 4]. Thus, Dr. Kruse's testimony, if allowed, would be presented under Federal Rule of Evidence 702 and subject to the disclosure requirements stated in Federal Rule of Civil Procedure 26(a)(2).

As Plaintiff knew months before the close of discovery that this expert witness might have relevant testimony to Plaintiff's case, however, the failure to disclose Dr. Kruse as an expert witness can neither be substantially justified nor harmless. *See Gipson v. Vought Aircraft Indus., Inc.*, 387 Fed. App'x 548, 554 (6th Cir. 2010) (unpublished decision). Plaintiff's counsel argues that "[i]t was only recently discovered that Dr. Kruse treated [Plaintiff] some six or seven years ago regarding her mental illness." [Record No. 101]. Plaintiff further argues that she was only able to reach Dr. Kruse after the discovery deadline to discuss her situation. *Id.* These excuses hardly amount to substantial justification, however, as they do not explain fully, if at all, why Plaintiff or her counsel only recently discovered that Plaintiff has been treated by Dr. Kruse six or seven years ago. Additionally, this failure is not harmless as it eliminates any chance Defendants would have had to challenge Dr. Kruse's testimony which addresses the material question of damages caused by the mental anguish and humiliation resulting from the averred conduct. As a result, this Court shall grant Defendants' motion to exclude the testimony of Dr. Lou Ann Kruse.

**IV. THE COURT SHALL DENY PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE.**

Finally, Plaintiff has failed to show that she is entitled to sanctions for spoliation of evidence for the elimination of JCDC

11

recordings made on August 25-26, 2008.  For this Court to grant Plaintiff's Motion, Plaintiff must establish the following:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. DOJ*, 622 F.3d 540, 553 (6th Cir. 2010)(quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).  As a result, Plaintiff must establish that Defendants had knowledge or "should have known that the evidence may be relevant to future litigation" before the Defendants would have an obligation to preserve the missing video recordings at issue.  *Id.* (quoting *Kronsich v. United States*, 150 F.3d 112, 126 (2d cir. 1998)).  Plaintiff must also show that the evidence was relevant to the contested issue.  *Id.* at 555-56 (quoting *Kronsich*, 150 F.3d at 127).  Only if Plaintiff meets these two burdens, will the Court then conduct a "'fact-intensive inquiry into a party's degree of fault' under the circumstances, including the recognition that a party's degree of fault may 'range from innocence through the degrees of negligence to intentionality'" in order to determine the severity of the spoliation instruction.  *Id.* at 554 (quoting *Adkins v. Wolever*, 554 F.3d 650, 652-53(6th Cir. 2009)).

Plaintiff, however, has failed to show that Defendants acted with a culpable state of mind. Plaintiff argues that Defendants knew future litigation may arise from Plaintiff's delivery inside her jail cell, and thus had a duty to preserve any recordings that would have documented that night. In particular, Plaintiff argues this Court should infer knowledge on behalf of Defendants based on their filing of written incident reports of the events of August 25-26, 2008. [Record No. 106]. As explained by Defendants, however, the JCDC Policy and Procedure Manual requires deputy jailers to provide a written report to the jailer whenever, among other things, "emergency medial [sic] treatment" occurs inside the JCDC. *See* [Record No. 103-3] (section of the JCDC Policy and Procedure Manual that also requires documentation of uses of force, fires, disciplinary actions, assaults, suicides or attempted suicides, inmate vandalism and other unusual incidents inside the JCDC). Thus, this Court cannot infer knowledge of future litigation through Defendants making incident reports documenting the events averred by Plaintiff as it was required by their own Policy and Procedure Manual. *See UMG Recordings, Inc. v. Hummer Winblad Venture Partners* (*In re* Napster, Inc. Copyright Litigation), 462 F. Supp. 2d 1060, 1069 (N.D. Cal. 2006) (holding the court could not infer knowledge through retention of records subject to a subpoena).

Furthermore, Plaintiff has not presented any evidence that Defendants should have reasonably anticipated a lawsuit. District courts have consistently looked for communication, whether it be written or verbal, by the plaintiff threatening to initiate litigation or announcing litigation against a defendant as the point at which a defendant has a duty to preserve relevant evidence. *See Adorno v. Port Auth.*, 258 F.R.D. 217, 228 (S.D.N.Y. 2009) (holding that Defendants had reason to anticipate litigation upon learning of Plaintiff filing an EEOC charge which had claims that overlapped claims in Plaintiff's complaint); *Peskoff v. Faber*, 244 F.R.D. 54, 60-61 (D.D.C. 2007) (holding that Defendant, a former business partner of Plaintiff, had no duty to preserve evidence until Plaintiff notified Defendant of a potential lawsuit despite the degeneration of their relationship for months); *King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell*, 448 F. Supp. 2d 876, 878-79 (S.D. Ohio 2006) ("Defendants duty to preserve [evidence] began when [Defendants] received a letter from Plaintiffs, indicating that this lawsuit was filed . . . ."); *UMG Recordings, Inc.*, 462 F. Supp. 2d at 1069 (holding that Defendant should have known litigation was probable after being told by Plaintiff that if "[Defendant] did not 'instantaneously comply with the injunction, we will sue the venture firm and you people personally'"). As a result, Defendants did not have knowledge of potential litigation nor should they have reasonably anticipated

litigation until it was filed on August 25, 2009 in the Jessamine Circuit Court.

Additionally, the Federal Rules of Civil Procedure do not allow sanctions for information that is stored on electronic information systems which is lost through the "routine, good-faith operation" of those systems. Fed. R. Civ. P. 37. Federal Rule of Civil Procedure 37(e) states "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." *Id*. Good-faith operation requires a party intervene to prevent the elimination of information on the system "because of pending or reasonably anticipated litigation." Fed. R. Civ. P. 37 2006 Advisory Committee's Note. Nonetheless, as previously stated, Plaintiff has not shown Defendants should have reasonably anticipated litigation through notice or otherwise until the lawsuit was filed in the Jessamine Circuit Court. Furthermore, Jessamine County Jailer Administrative Assistant Leisa Brumfield, who was employed as the Chief Deputy Jailer on August 25-26, 2008, states in her affidavit that the recordings were overwritten in the normal course of business after three months due to limited hard drive space on the server. [Record No. 103-2, para. 2]. As a result, these recordings were lost "as a result of the routine, good-faith operation of an electronic information system," and this

Court shall deny Plaintiff's motion for sanctions for spoliation of evidence.[6]

**V. CONCLUSION**

For the reasons set forth above, **IT IS ORDERED**:

(1) that Plaintiff's Motion in Limine [Record No. 78] is **GRANTED, IN PART**, and **DENIED, IN PART**;

(2) that evidence of Plaintiff's medication taken prior to arrest, online photographs of Plaintiff, and settlement offers and negotiations between Plaintiff and Defendants shall not be admissible at trial;

(3) that Plaintiff's criminal history and juvenile records shall be admissible solely for the purpose of establishing Plaintiff's prior experience inside the JCDC or other jails;

(4) that Defendants' Joint Motion to Exclude the Testimony of Dr. Lou Ann Kruse [Record No. 95] is **GRANTED**, and the testimony of Dr. Lou Ann Kruse shall not be admissible at trial;

(5) that Plaintiff's Motion in Limine and for Sanctions for Spoliation of Evidence [Record No. 100] is **GRANTED, IN PART**, as to the exclusion of the audio recording from May 19, 2011 and the

---

[6] Assuming arguendo that Plaintiff could show Defendant had a duty to preserve evidence, however, they would not be relevant to this litigation as the recordings would have captured activity in areas that have no bearing to Plaintiff's claims, namely the lobby, the booking area and an area of the jail housing female inmates where Plaintiff was not housed. [Record No. 103-2, para. 2] (affidavit of Brumfield).

photographs of Plaintiff, and **DENIED, IN PART**, as to Plaintiff's request for sanctions.

This, the 19th day of August, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge